AETNA FINANCE COMPANY,
Appellant,

v.

Larry B. ABLES, Appellee.

No. 17909.

Court of Civil Appeals of Texas,
Fort Worth.

Dec. 1, 1977.

Durward D. Moore, Dallas, for appellant.

Larry B. Ables, pro se.

## OPINION

MASSEY, Chief Justice.

This is another case in which is made obvious the erroneous opinion of the general public that when there has been repossession of retail commodities (which constitute security for indebtedness) because of failure to make the contracted installment payments to the vendor (or his assignee) on the strength of the mortgage, all reciprocal obligations come to an end so that nothing is thereafter owed either by or to the vendor (or his assignee mortgagee).

Here the vendor's assignee, Aetna Finance Company, repossessed a refrigerator, range, and under-counter dishwasher which had been purchased by Larry B. Ables on March 4, 1975 for $1,286.60, with unpaid balance of $1,200.00 financed and assigned to Aetna Finance Company upon security of the appliances. The indebtedness amount of $1,577.88 (including interest of $377.88) was to be paid by Ables at the monthly rate of $43.83 in order to retire his indebtedness in 36 months, with the first payment due April 5, 1975.

Ables made the payments which fell due in April, May, and June of 1975 but defaulted in July of 1975. With his consent Aetna Finance Company repossessed the appliances. Aetna was shown to have sold these. Having properly applied credits on Ables' note, save for "amounts realized from sale of the appliances by commercially reasonable disposition," Aetna brought suit against Ables for deficiency judgment following sale of the collateral. The amount for which Aetna Finance Company sued was an alleged deficiency of $761.53 plus $500.00 as an attorney's fee.

Trial was to the court without a jury, which rendered judgment that Aetna take nothing from Ables by its suit. Aetna appealed.

We affirm.

Having application to the instant case is what was written by this court in *Christian v. First Nat. Bank of Weatherford,* 531 S.W.2d 832, 842 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n.r.e.), as follows:

"The references herein made are to the Texas Business and Commerce Code annotated (Uniform Commercial Code). Part 5 of Article 9 (9.501–7) of the Uniform Commercial Code outlines the proper procedures for a secured party to follow after a debtor's default. Section 9.504 allows the secured party to dispose of the repossessed collateral so long as the disposition is commercially reasonable. Comment 6 to Section 9.504 repeats that the Code's general obligation of good faith (Section 1.203) is imposed upon these parties. Section 9.507(a) states that if the collateral has been disposed of without compliance with the Uniform Commercial Code, the debtor may recover for any losses sustained as a result of this wrongful disposition. Section 9.507(a) does not state that it is an exclusive remedy. Section 1.103 states that the Uniform Commercial Code remedies are cumulative.

"In the case of *First National Bank of Bellevue v. Rose,* 188 Neb. 362, 196 N.W.2d 507 (1972) the Bank sued for a deficiency judgment after having sold the collateral. The debtor had proper notice of the sale. The trial court directed a verdict for the Bank holding that the alleged inadequacy of price was an affirmative defense which could not be raised by general denial. The Nebraska Supreme Court reversed and held that since the defendant-debtor had filed a general denial and introduced evidence contradicting the secured party's claim that the sale price equaled the fair and reasonable value of the collateral, a question of fact was presented for the jury. The effect of this holding was that the Bank was required to prove that all offsets and credits had been allowed, which necessarily implied an obligation to prove that the sale of collateral was made in a commercially reasonable manner. When defendants contradicted this evidence a jury question was presented.

"As previously indicated above, remedies previously available to a debtor are not eliminated unless the Code specifically deletes them. Prior to the adoption of the Code a debtor could use a secured party's failure to comply with the terms of the chattel mortgage and the applicable resale and repossession law as a defense or a partial defense to an action to obtain a deficiency judgment.

"  .  .  .

"In *Kolbo v. Blair,* 379 S.W.2d 125 (Corpus Christi, Tex.Civ.App., 1964, ref., n.r.e.) that court had before it a suit by a creditor against his debtor to obtain a deficiency judgment after having sold the collateral. That court stated: 'The appellees sought a deficiency judgment. Deficiency is that part of the secured obligation which remains after crediting it with the net proceeds accruing from a valid sale of the security by the creditor.' The court further stated the rule to be: 'A prior valid sale, fairly conducted, or a determination that the property had been converted, and then a finding of the reasonable market value of such property as of the date of its conversion are the conditions precedent to the entry of a proper deficiency judgment.  .  .  .  If the

value of the said property, considered as it was on said date (the date of the appropriation by the appellees), is found to be less than the debt, then the appellants should be given credit for such value, and appellees a judgment for the remaining deficiency, plus interest and attorney fees.' For a general discussion on this subject and an analysis of the decided cases see Vol. 6, No. 4, Uniform Commercial Code Law Journal, p. 344, 'May a "Wrongdoer" Recover a Deficiency Judgment, or Is Section 9–507(1) a Debtor's Exclusive Remedy?' "

■ In the instant case there was evidence that Aetna Finance Company realized $225.00 from the sale of Ables' refrigerator and $356.95 from the sale of his under-counter dishwasher. Its witness testified that Ables' stove had been sold, but he did not know the amount obtained for it. He observed that such amount probably was part of the $356.95 earlier testified to have been received from the sale of the dishwasher. The witness did not know how the sales of the several appliances, or any of them, had been conducted. He did testify that in the normal course of sale of repossessed security items Aetna would get several bids and try to get the best price obtainable. There was no testimony that the sales of the properties here involved were sold according to this "normal course." There was a complete absence of evidence upon the market value of any of the three appliances at time of repossession or sale by Aetna.

Under the foregoing the court, in this case the fact finder, was deprived of knowledge of the amount Aetna realized, or should have, from a "commercially reasonable disposition" of the appliances repossessed.

■ .By the proof as of the date of March 4, 1975 (when Ables purchased the appliances from Aetna's assignor) the court could find that at such time the market value of the appliances was $1,286.60, the agreed purchase price. There having been no testimony to the contrary, the presumption would obtain that such market value of

$1,286.60 continued in effect—even to the time of Aetna's sale. This justified the implied fact finding of the court that Aetna should have realized by its sale of its security at least enough money to retire the indebtedness owing by Ables. What should have been realized would be, in view of the state of the record, the amount to be credited to Ables' account. When so credited Aetna Finance Company would obviously have been fully paid and there would be no deficiency owed by Ables.

■ By provision of Texas Business and Commerce Code, Art. 9.504, "Secured Party's Right to Dispose of Collateral After Default; Effect of Disposition," even where the method of sale of the security is "commercially reasonable" the debtor is entitled to notice except when, after default, he has renounced or modified the right. In this case Ables was not notified and he was entitled to notice. Furthermore sale right by Art. 9.504 is expressly made subject to antecedent Art. 2.723, "Proof of Market Price; Time and Place," because it is in Chapter 2 of the Code. Thereby, through necessary implication, was the trial court authorized to look to the price and market value of the security on March 4, 1975 as "within any reasonable time before or after" the time of repossession and sale and to treat it as persisting at the material time.

Aetna's complaints on appeal is that the fact finding on value (price and/or market value of repossessed articles sold), necessarily presumed as support of the judgment, was contrary to the greater weight and preponderance of the evidence and constituted an abuse of discretion. We deem the complaints to be without support of the record.

Judgment is affirmed.