SIBONEY CORPORATION, Appellant,

v.

CHICAGO PNEUMATIC TOOL COMPANY, Appellee.

No. 17089.

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 25, 1978.

Rehearing Denied June 22, 1978.

Ellis F. Morris, Houston, for appellant.

Baker & Botts, David P. Cotellesse, Houston, for appellee.

PEDEN, Justice.

Siboney Corporation appeals from the granting of a deficiency judgment in favor of Chicago Pneumatic Tool Company, the owner and holder of a note. Chicago Pneumatic repossessed the collateral for the note, held a public sale and then brought this action for the deficiency. The jury found that Chicago Pneumatic sent reasonable notice of the sale to Siboney, declined to find that Chicago Pneumatic failed to act in a commercially reasonable manner or that the $100,000 received for the collateral was grossly inadequate but found that the fair market value of the equipment at the time of the sale was $150,000. The court entered judgment on this verdict in favor of Chicago Pneumatic for the amount of the deficiency plus interest and attorney's fees. Siboney argues on appeal that the notice was insufficient, so the sale was not commercially reasonable as a matter of law,

that the sale price was grossly inadequate as a matter of law, that the findings as to commercial reasonableness and as to adequacy of the sale price were not supported by the evidence, and that a remittitur should be ordered. Appellant also claims that the appellee failed to rebut a presumption that the value of the collateral equals the debt. We affirm.

In February, 1969 MoRoCo, Inc., executed a $296,255 note and a chattel mortgage in favor of Compression Fabricators, Inc. for the purchase of 3 Chicago Pneumatic air compressors. Compression Fabricators assigned the note to Chicago Pneumatic, and Siboney assumed the liabilities of Compression Fabricators when it acquired that company in 1969. In December of that year Siboney purchased the air compressors from MoRoCo and assumed the primary obligation on the note. Siboney gave Compression possession of the equipment, and Compression continued to make the payments for a time but stopped in the spring of 1971.

Chicago Pneumatic repossessed the compressors in Las Vegas, Nevada, shipped them to Houston and stored them at the yard of Texas Commercial Industries, Inc., where it conducted a public sale on October 4, 1971. Chicago Pneumatic purchased the compressors on its bid of $100,000, credited the proceeds of the sale to the note, unsuccessfully demanded the deficit and instituted this suit.

Appellant's first point of error is that the notice of sale given by Chicago Pneumatic to Siboney did not meet the reasonable notification requirements of § 9.504(c) of the Texas Business and Commerce Code, so the sale was not commercially reasonable as a matter of law.

§ 9.504(c) of the Texas Business and Commerce Code states that ". . . reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor." This is the notice sent by Chicago Pneumatic and received by Siboney:

Notice of Sale

"On October 4, 1971, at 1:00 p. m. at Texas Commercial Industries, Inc., 11601 North Houston-Rosslyn Road, the following described property of Compression, Inc. of Houston, Texas will be exposed to sale at public auction without reserve:

"3 High Chicago Pneumatic Air Compressors, as follows: (1) CP5FE–43 Serial Nos. 80893, 81254, 81256, 82260 and 80851, Caterpillar Engine D398B, Serial No. 75B–848. (2) CP5FE–43, Serial Nos. 80892, 81255, 81258, 82259 and 81006, Caterpillar Engine D398 B Serial No. 75B847. (3) CP–6FE–21 Serial Nos. 81715, 80309 and 81225, Caterpillar Engine D398B Serial No. 66B207. Plus miscellaneous items and equipment including controls used in connection therewith and necessary to make complete units.

"This sale is held to enforce the rights of Chicago Pneumatic Tool Company, New York, New York, as assignee arising under a Security Agreement covering the above-described property, the original parties to which were Moroco, Inc., a Nevada Corporation, debtor and Compression Fabricators, Inc., secured party.

"Terms: All Cash.

CHICAGO PNEUMATIC TOOL
COMPANY
By: /s/ Ray A. Gipson
Ray A. Gipson, Attorney
3000 One Shell Plaza
Houston, Texas 77002
713–229–1465"

■■ Mr. Gipson testified that omission of the words "Houston, Texas" after the address of Texas Commercial Industries was an oversight. Siboney argues that this notice was insufficient as a matter of law because it failed to show the city in which the sale was to be held. Whether the acts of a party are reasonable is usually a question of fact. "Reasonable notification" is not defined in the article; we consider that less than a full and complete notice is required. We hold that a fact issue was raised and that the jury was entitled to conclude that the notice was sufficient to inform reasonable business persons of the place of the sale.

The notice was sent to Siboney's Dallas office. The attorney for the creditor who signed the notice gave a Houston address and phone number, the address of the place of sale was given as 11601 North Houston-Rosslyn Road, the name of the property's owner was shown to be Compression, Inc. of Houston, Texas, and Siboney did not produce any evidence that its representatives either did not understand or could not deduce the place of the sale from the notice. Siboney's testimony shows that it merely forwarded the notice to Compression, Inc., a company it had previously owned, and did nothing further. Siboney offered no showing that it was prejudiced by the omission of "Houston, Texas" after the address of Texas Commercial Industries in the notice.

■■ Appellant urges as other points of error:

2. "The jury finding that the sale was commercially reasonable is not supported by the evidence."

4. "As a matter of law, the sale price of the collateral security was for a grossly inadequate price."

5. "The jury finding that the sale price was not grossly inadequate is not supported by the evidence and conflicts with the finding of fair market value."

Among others, the trial court submitted these issues and instructions and received these findings:

Special Issue No. 2

"Do you find from a preponderance of the evidence that Chicago Pneumatic failed to act in a commercially reasonable manner in connection with the public sale of the Equipment?

"ANSWER: 'We do' or 'We do not'.
"ANSWER: __We do not.__
"INSTRUCTION:

"By 'commercially reasonable' is meant a sale so conducted as would have been conducted by an ordinary and prudent businessman operating under the same or similar circumstances. A commercially reasonable sale is a sale in the usual

manner for the Equipment in any recognized market therefor or at the current price in such market at the time of the sale or a sale in conformity with reasonable commercial practices among dealers. The fact that a better price could have been obtained at a different time or in a different method from that selected by Chicago Pneumatic is not of itself sufficient to establish that a public sale was not made in a commercially reasonable manner."

Special Issue No. 3

"Do you find from a preponderance of the evidence that the price of $100,000 for the three compressors at the alleged sale of October 4, 1971 was grossly inadequate consideration?

"ANSWER: 'We do' or 'We do not.'

"ANSWER:    We do not.   

"INSTRUCTION:

"The fact that a better price could have been obtained at a different time or in a different manner from that selected by Chicago Pneumatic is not itself sufficient to establish that the sales price realized was grossly inadequate.

"The term 'grossly inadequate consideration' means a consideration so far short of the real value of the property as to shock a correct mind, and thereby raise a presumption that fraud attended the purchase."

The jury's answers to these issues are nothing more than a failure or refusal of the jury to find from a preponderance of the evidence that (Issue 2) appellee failed to act in a commercially reasonable manner and (Issue 3) that the sale price was grossly inadequate. The answers mean, in law, that Siboney failed to carry its burden of proving these allegations. *C. & R. Transport, Inc. v. Campbell,* 406 S.W.2d 191 (Tex. 1966).

■   Point of error 4 is a no evidence point. We will consider points 2 and 5 to be great weight points even though the appellant did not use that terminology. See Michol O'Connor's *Evidence Points on Appeal,* at 37 Texas Bar Journal 839, 842. A motion for new trial is no longer a prerequisite for appellate review of a great weight point. Rule 324, Texas Rules of Civil Procedure (1978).

In *Pruske v. National Bank of Commerce,* 533 S.W.2d 931, 937 (Tex.Civ.App.1976, no writ), the San Antonio Court of Civil Appeals reviewed the evidentiary support for a trial court finding that a sale was commercially reasonable. Elements mentioned by the court were (a) a depressed market, (b) notification to the debtor, (c) adequate newspaper publicity of the sale, (d) adequate opportunity for inspection, (e) acceptance of the highest bid, and (f) minimal expenses of the sale.

The units in question were designed and manufactured for drilling by compressed air. The former Houston district manager for Chicago Pneumatic testified that the condition of the air drilling business in 1971 was very low and people had compressor units standing on their lots. The president of Texas Commercial Industries described the condition of the market for air compressors in 1971 as very poor. We have held that the evidence supports the jury finding that Siboney received reasonable notification of the sale. Appellee published a newspaper ad for two days in a Houston daily newspaper and mailed notices to some 19 used equipment companies. An indication that adequate time was provided is shown by the fact that a Mr. Hart with Energy Incorporated of Oklahoma City, who received one of the mailed notices, came to Houston and inspected the equipment. All but two of the companies notified had done business with Texas Commercial, so they were not misled by failure to state in the notice that Texas Commercial was located in Houston. The units were brought to Houston, where the demand for them was said to be greatest.

■   The public sale was conducted as an auction, but only two bidders, Chicago Pneumatic and Guinn Equipment, participated. The bidding was opened at $50,000 and went up in $5,000 and $2,500 increments until Chicago Pneumatic placed the

top bid of $100,000. There is no evidence of the cost of conducting the sale. We hold this evidence sufficient to support the jury's answer to Issue No. 2.

We also hold that the jury's failure to find that the consideration was grossly inadequate is not contrary to the great weight of the evidence. The appellee's witness testified to the absence of demand for air drilling units. Although the used diesel engines were marketable, most of the demand for compressors is for compressing natural gas, where engines that run on the readily available gas are used instead of diesels. Further, there was testimony that when compressors are transferred from one use to another they usually need to be redesigned and rebuilt because the pressures they are called upon to develop vary a great deal. This is particularly true in compressing gas, the application where the demand is. Witnesses called by the appellee testified to the efforts made to obtain a better price and to their opinion that the one obtained represented the market value of the compressors.

After the collateral was bought at the sale by Chicago Pneumatic, it was later sold to Texas Commercial for the same price, $100,000. That company refabricated it, at some expense, sold it in pieces over a period of eight months, and could obtain only $140,000 for it, a fact suggesting that fraud did not attend the purchase and one that tended to contradict the opinion testimony of appellant's witness that the value of the used air compressors was from $275,000 to $300,000. Nor did the jury's conclusion that the fair market value was $150,000 convince it that the sales price was grossly inadequate. It is well known that full market value is seldom obtained at forced sales.

■ Appellant contends in its third point of error that appellee was not entitled to a deficiency judgment because it failed to rebut the presumption that the value of the collateral was equal to the amount of the debt. That presumption arises only when the secured party fails to comply with the notice requirement. *O'Neil v. Mack Trucks, Inc.*, 533 S.W.2d 832, 837 (Tex.Civ.App.

1975), rev'd on other grounds, 542 S.W.2d 112 (Tex.1976), recalled and reissued, 551 S.W.2d 32 (Tex.1977); *United States v. Whitehouse Plastics*, 501 F.2d 692 (5th Cir. 1974), cert. denied, 421 U.S. 912, 95 S.Ct. 1566, 43 L.Ed.2d 7 (1975). Since the notice question has been resolved in favor of the appellee in our case, that presumption does not arise.

■ The appellant's sixth and final point of error is that it should receive a $50,000 remittitur because the jury found a fair market value of the collateral to be $150,000. The fact that a better price could have been obtained does not render the sale commercially unreasonable. § 9.507(b) of the Texas Business and Commerce Code. The secured party received reasonable notice and the sale was commercially reasonable; appellee is entitled to recover the full amount of the deficiency.

Affirmed.