John G. O'HARA, Appellant,

v.

The FIRST NATIONAL BANK OF
FORT WORTH, Appellee.

No. 18345.

Court of Civil Appeals of Texas,
Fort Worth.

Dec. 11, 1980.

Callaway & Marshall, and Clyde M. Marshall, Jr., Fort Worth, for appellant.

Shannon, Gracey, Ratliff & Miller, and Daniel L. Lowry, Fort Worth, for appellee.

## OPINION

SPURLOCK, Justice.

John G. O'Hara (O'Hara) appeals a judgment obtained against him by The First National Bank of Fort Worth (Bank) for a deficiency on a note. O'Hara, an accommodation co-maker, contends that collateral was not sold in a commercially reasonable manner and he received no notice of a proposed sale of the collateral. There is further contention that an agreement between the Bank and the principal debtor, Sidney N. Shults (Shults), released him from the debt.

We reverse and render.

Shults was a customer of the Bank and had borrowed money from the Bank and had signed notes and renewed notes. On October 24, 1974, he wanted to renew a note owed the Bank in the sum of $7,007.76. The Bank required him to put up collateral and obtain the signature of another person who would also be liable on the note. As it developed this person was O'Hara. O'Hara received no portion of any of the loans made by the Bank.

Before signing the note O'Hara talked to Tommy Turner, a vice president of the Bank. This officer told him that Shults had put up 100 shares of stock in Live Oak State Bank, Rockport, Texas. In response to questions Turner told O'Hara that the book value of the stock was close to $20.00 per share but that such stock usually sold for two or three times its book value. With this assurance, O'Hara signed the note guaranteeing payment of Shults' debt.

Shults made payments on the note over a period of time. A default occurred and the Bank made an arrangement with Shults, without the knowledge of O'Hara, for the Bank to sell the stock. Mr. White, a vice president of the Bank, sold the collateral to Live Oak State Bank, Rockport, Texas, at the only price the Bank offered, pursuant to a telephone conversation. The officer testified that he did not know the market value or book value of the stock. They did not

have it appraised and made no investigation as to its market value and sought no other offer for the sale of the stock. They admitted that they made no contact with O'Hara about the delinquency or the sale of the stock prior to its sale.

Mr. Lockhart, an adjustment officer of the Bank in charge of the collection of delinquent notes, testified that part of December, 1975 installment was delinquent when the stock was sold. He further testified that he knew that O'Hara was the co-maker of the note only as an accommodation party. After the stock was sold, the proceeds of the sale was applied to the December and future payments on the note. The Bank's first contact with O'Hara about the note was April 1, 1977. After the collateral was sold the proceeds were applied to the note. The Bank contacted O'Hara who made a payment in excess of $950.00 on the note not knowing that the collateral had been sold.

O'Hara testified that he had planned to pay off the balance of the note and pick up the collateral and become subrogated to the Bank's interest therein. When he later talked to the officer of the Bank about doing this he was told, for the first time, that the collateral had been sold before this. O'Hara testified that he would have paid off the note in order to obtain the subrogation rights if he had been advised that there was a contemplated sale of the collateral. He also said he would have paid two times the $20.00 book value of the stock.

All references herein made are to Tex. Bus. & Comm. Code Ann. (Supp. 1980–81) (Uniform Commercial Code). O'Hara was a "debtor" as defined in sec. 9.105(a)(4). Said section in part provides that:

"'Debtor' means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, . . . ."

Sec. 9.504(c) contains the provisions concerning right to dispose of collateral after default. It provides that the collateral may be disposed of by public or private proceedings "but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasona-

ble. . . ." Reasonable notification of a time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor. The exceptions contained in this section concerning perishable property, etc., are not application in this case.

The facts we have outlined above are undisputed. In *Aetna Finance Co. v. Ables*, 559 S.W.2d 139 (Tex.Civ.App.—Fort Worth 1977, no writ) in an opinion by Massey, Chief Justice of this court, we had before us a suit for a deficiency judgment following the sale of collateral. Aetna had repossessed certain appliances on which it held a purchase money lien, sold them without notice to Ables and proceeded to sue for the deficiency. The court held that Aetna had a fiduciary duty to sell the collateral in a commercially reasonable manner so as to realize its reasonable market value. There was no proof of a commercially reasonable sale, or of the reasonable market value at the time of sale. The holding was that Aetna had failed to discharge its burden of proving such, mandatory to its showing that all reasonable offsets and credits had been allowed in the face of Ables' general denial. The trial court's take nothing judgment was affirmed. Cited and in the opinion were quotes from *Christian v. First National Bank of Weatherford*, 531 S.W.2d 832, 842 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n.r.e.), and from *Kolbo v. Blair*, 379 S.W.2d 125 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.).

In *Christian v. First National Bank of Weatherford*, it was held that the secured party, suing for a deficiency, had a fiduciary duty to see that the property held as collateral was sold at a fair market value in a commercially reasonable manner.

In the case of *First State Bank of Keene v. Northrop*, 519 S.W.2d 161 (Tex.Civ.App. —Waco 1975, no writ), the court had before it the question of requirement of notice. The lender brought suit against the co-maker of a note to recover deficiency thereon following the repossession and sale of truck which was given as collateral. The trial court rendered judgment that the co-signer take nothing. The court of civil appeals affirmed and held that the evidence sup-

ported the finding that the co-signer did not receive reasonable notice of the repossession and sale. It was not until after the sale that he was notified.

We hold that in the instant case the collateral was not disposed of in the manner required by Sec. 9.504 and therefore there should have been a take nothing judgment.

O'Hara, as an accommodation co-maker on the note, which fact was known to the Bank, occupied the position of a surety and was entitled to the ordinary rights of suretyship including the right of recourse on the instrument and subrogation on the security upon payment of the obligation. When O'Hara learned of the default he told the Bank that he would pay off the note and then be subrogated to the collateral. This is when he learned that the collateral had been sold and this caused him to lose the right of subrogation. This has the effect of releasing O'Hara. The accommodation party has the right of recourse on the instrument. Sec. 3.415(e). The law concerning this question is discussed in 53 Tex.Jur.2d *Suretyship* secs. 41, 59 (1964) as to the method of payment and negligence in preserving security.

The case was fully developed in the trial court.

We therefore reverse and render judgment that the Bank take nothing.