SUNJET, INC., et al., Appellants,

v.

FORD MOTOR CREDIT COMPANY, Appellee.

No. 05-85-00276-CV.

Court of Appeals of Texas, Dallas.

Dec. 10, 1985.

Rehearing Denied Jan. 10, 1986.

Kenneth L. King, Bruce W. Claycombe, Jones, Claycombe & King, Dallas, for appellants.

Jeb Loveless, Joann Wilkins, Burford & Ryburn, Dallas, for appellee.

Before GUITTARD, C.J., and AKIN and ALLEN, JJ.

AKIN, Justice.

This is an appeal from a summary judgment granted Ford Motor Credit Company for a deficiency on a promissory note against Sunjet, Incorporated and on a guaranty contract against Newton R. Serrio, Anthony Fasonella, I. Eugene Barlow, and Richard R. Wadsworth, Jr. The note was secured by a Learjet aircraft which was repossessed and sold by Ford at a public sale. The principal question presented on this appeal is which party had the burden of proof with respect to whether the sale of the aircraft was conducted in a commercially reasonable manner under articles 9.504(c) and 9.507(b) of the Texas Business and Commerce Code (the "U.C.C."). We hold that the burden of proof was upon the secured party, Ford Motor Credit. A corollary question is whether the summary judgment evidence establishes as a matter of law that the sale was conducted in a commercially reasonable manner by Ford. We hold that it does not. Accordingly, we reverse and remand.

■ We first turn to the question of which party has the burden of proof on the issue of commercial reasonableness. A number of provisions of the U.C.C., as adopted in Texas, bear on the question of commercial reasonableness and its legal effects. Article 9.504 provides in pertinent parts:

> (a) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral....

> (b) If the security interest secures an indebtedness ... unless otherwise agreed, the debtor is liable for any deficiency....

> (c) ... but every aspect of the disposition [of the collateral] including the method, manner, time, place and terms *must be commercially reasonable.* (Vernon Supp.1985) [Emphasis added].

Article 9.507 provides in pertinent parts:

> (a) If it is established that the secured party is not proceeding in accordance with the provisions of this subchapter disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification ... has a right to recover from the secured party any loss caused by a failure to comply....

> (b) The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. *If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner.*[1] (Vernon Supp.1985) [Emphasis added].

---

**1.** None of these provisions specifically state that the right of a secured party to collect a deficiency judgment is affected by failure to sell the collateral in a "commercially reasonable" manner. This is apparently the accepted view of virtually all jurisdictions, and may be fairly implied from the U.C.C. There is, however, a controversy among the states regarding the appropriate remedy for noncompliance by the secured party. Some states offset the fair market value of the collateral against the deficiency, and presume that the two are equal unless proven otherwise by the secured party. Some states completely disallow any deficiency judgment to

As we read these provisions, when the legislature chose the language "a secured party . . . may dispose of . . . the collateral . . . but . . . *must* proceed in a commercially reasonable manner," the legislature, by implication, placed the burden of proving that the sale was conducted in a commercially reasonable manner upon the secured party, and we so hold. *O'Hara v. First National Bank of Fort Worth*, 613 S.W.2d 306, 307 (Tex.Civ.App.—Fort Worth 1980, no writ); *Tackett v. Mid-Continent Refrigerator Company*, 579 S.W.2d 545, 548–49, (Tex. Civ.App.—Fort Worth 1979, writ ref'd n.r. e.); *Aetna Finance Company v. Ables*, 559 S.W.2d 139, 140, (Tex.Civ.App.—Fort Worth 1977, no writ). Our holding is logical because the secured party has a better knowledge of the facts surrounding his disposition of the collateral than has the debtor. Furthermore, in an action for a deficiency, the secured party is the party seeking relief, and should bear the burden of justifying the recovery he claims under the U.C.C.

Nevertheless, Ford argues that to place the burden of proof on the secured party would be against the greater weight of authority. The other courts of appeals in Texas which have addressed this issue, excluding the Fort Worth Court of Appeals, have held or assumed that the burden was upon the debtor seeking to avoid or reduce a deficiency judgment to prove that the secured party's disposition of the collateral was not done in a commercially reasonable manner. *Ward v. First State Bank*, 605 S.W.2d 404, 407 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.) (failure to dispose of collateral properly "has been treated" as an affirmative defense on which the debtor has the burden of proof); *Siboney Corporation v. Chicago Pneumatic Tool Company*, 572 S.W.2d 4 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.) (in the context of an attack based on the contention that the finding of commercial reasonableness was not supported by the evidence, the court presumed that the burden was properly on the debtor); *McCollum v.*

a secured party who has not sold the collateral in a commercially reasonable manner. This

*Parkdale State Bank*, 566 S.W.2d 670 (Tex.Civ.App.—Corpus Christi 1978, no writ) (the court characterized as an "affirmative defense" debtor's assertion that the collateral was not sold in a commercially reasonable manner, but never specifically addressed the issue of burden of proof); *Pruske v. National Bank of Commerce of San Antonio*, 533 S.W.2d 931, 935 (Tex. Civ.App.—San Antonio 1976, writ ref'd n.r.e.) (the court held that the burden of proving commercial unreasonableness is on the debtor).

Of these cases, only *Pruske* directly addresses the issue of where the burden of proof should lie. But *Pruske* devotes only one sentence to the issue and relies for its holding on two cases which did not arise under the U.C.C., *Tarrant Savings Association v. Lucky Homes, Inc.*, 390 S.W.2d 473 (Tex.1965), and *Fryer & Willis Drilling Company v. Oilwell, Division of United States Steel Corporation*, 472 S.W.2d 857 (Tex.Civ.App.—Waco 1971), *rev'd on other grounds*, 493 S.W.2d 487 (Tex.1973). We expressly disagree with these decisions, which are contrary to our holding here. Although we have not previously directly decided this issue, we have assumed, without deciding, that the burden was upon the secured party to prove the commercial reasonableness of the sale in order to establish his right to a deficiency judgment. *See Schultz v. General Motors Acceptance Corporation*, No. 84–726 (Tex.App.—Dallas, Sept. 18, 1985, no writ) (not yet reported).

Furthermore, in interpreting the U.C.C. we should consider the overall purposes of that act. TEX.BUS. & COM.CODE ANN. § 1.102(a) (Tex.UCC) (Vernon 1968). One of these purposes, as set forth in article 1.102(b)(3), is "to make uniform the law among the various jurisdictions." Consequently, we must look to interpretations of the U.C.C. by courts in other jurisdictions, so that we may attempt, if possible, to promote uniformity in the application of the U.C.C. In this respect, we note that

particular question is not before us on this appeal; consequently, we need not address it.

the vast majority of other jurisdictions hold that the secured party must prove the commercial reasonableness of his disposition of the collateral when he seeks to collect a deficiency judgment.[2] Thus, our holding is in conformity with this majority rule that the burden is upon the secured party seeking a deficiency judgment to prove the commercial reasonableness of his disposition of the collateral, at least where, as here, the debtor has asserted lack of commercial reasonableness.

We now must review the summary judgment evidence in this case to determine if Ford, the secured party here, met its burden of proof on the issue of commercial reasonableness. In a summary judgment case, we must review the evidence in a light most favorable to the non-movant to determine whether there exists any genuine issue with respect to any of the material facts. *Town North National Bank v. Broaddus,* 569 S.W.2d 489, 494, (Tex.1978); *Valley Stockyards Co. v. Kinsel,* 369 S.W.2d 19, 20 (Tex.1963).

On December 21, 1979, Sunjet executed a promissory note in the sum of $1,669,940 payable to Ford Motor Credit and a securi-

**2.** The following cases place the burden of proving commercial reasonableness upon the secured party. Some are limited to instances where the debtor has raised the issue in his pleadings, either by denying the plaintiff's assertions of commercial reasonableness or by allegations in the nature of an affirmative defense. In addition, many of these cases specifically limit their holdings to instances where the secured party seeks to collect a deficiency judgment from the defendant, whether this is raised by the secured party as plaintiff in an original petition or as defendant in a counterclaim. Finally, a few of these cases simply presume, without explicitly holding, that the burden is on the secured party to prove commercial reasonableness. We have not cited cases that dealt only with the adequacy of notice requirements of the U.C.C., although the issue of burden of proof in those cases is very closely related to the issue here. *See,* on that issue, many of the cases cited at 59 A.L.R.3d 369. *Kobuk Engineering & Contracting Services, Inc. v. Superior Tank & Construction Co.—Alaska, Inc.,* 568 P.2d 1007 (Alaska 1977); *Broadmont Corporation v. Fashion Floors, Inc.,* 124 Ariz. 282, 603 P.2d 553 (Ariz.Ct.App.1979); *Thrower v. Union Lincoln-Mercury, Inc.,* 282 Ark. 585, 670 S.W.2d 430 (1984); *American Business Credit Corporation v. Kirby,* 122 Cal.App.3d 217, 175 Cal.Rptr. 720 (Cal.Ct.App.1981); *Hertz Commercial Leasing Corporation v. Dynatron, Inc.,* 37 Conn.Supp. 7, 427 A.2d 872 (Conn.Super.Ct.1980); *Bank of Oklahoma v. Little Judy Industries, Inc.,* 387 So.2d 1002 (Fla.Dist.Ct.App.1980); *Hardin v. Norlin Music Inc.,* 159 Ga.App. 167, 283 S.E.2d 21 (Ga.Ct.App.1981); *Liberty Bank v. Honolulu Providoring, Inc.,* 65 Hawaii 273, 650 P.2d 576 (Hawaii 1982); *Mack Financial Corp. v. Scott,* 100 Idaho 889, 606 P.2d 993 (1980); *A.A. Store Fixture Co., Inc. v. Kouzoukas,* 87 Ill.App.3d 631, 43 Ill.Dec. 131, 410 N.E.2d 131 (Ill.App.Ct.1980); *Hall v. Owen County State Bank,* 175 Ind.App. 150, 370 N.E.2d 918 (Ind.Ct.App.1977); *Beneficial Finance Co. of Black Hawk County v. Reed,* 212 N.W.2d 454 (Iowa 1973); *Medling v. Wecoe Credit Union,* 234 Kan. 852, 678 P.2d 1115 (1984); *School Supply Company, Inc. v. First National Bank of Louisville,* 685 S.W.2d 200 (Ky. Ct.App.1984); *Poti Holding Company, Inc. v. Piggott,* 15 Mass.App. 275, 444 N.E.2d 1311 (Mass. App.Ct.1983); *Wayne Bank v. Dore,* 119 Mich. App. 634, 326 N.W.2d 588 (Mich.Ct.App.1982); *Chemlease Worldwide, Inc. v. Brace, Inc.,* 338 N.W.2d 428 (Minn.1983); *First Missouri Bank & Trust Company of Creve Coeur v. Newman,* 680 S.W.2d 767 (Mo.Ct.App.1984); *Bank of Sheridan v. Devers,* — Mont. —, 702 P.2d 1388 (1985); *DeLay First National Bank and Trust Company v. Jacobson Appliance Co.,* 196 Neb. 398, 243 N.W.2d 745 (1976); *Levers v. Rio King Land and Investment Co.,* 93 Nev. 95, 560 P.2d 917 (1977); *Conti Causeway Ford v. Jarossy,* 114 N.J.Super. 382, 276 A.2d 402 (N.J.Dist.Ct.1971), *aff'd,* 118 N.J.Super. 521, 288 A.2d 872 (N.J.Super.A.D. 1972), and *Franklin State Bank v. Parker,* 136 N.J.Super. 476, 346 A.2d 632 (N.J.Dist.Ct.1975); *Clark Leasing Corporation v. White Sands Forest Products, Inc.,* 87 N.M. 451, 535 P.2d 1077 (1975); *Mack Financial Corporation v. Knoud,* 98 A.D.2d 713, 469 N.Y.S.2d 116 (N.Y.App.Div. 1983); *Church v. Mickler,* 55 N.C.App. 724, 287 S.E.2d 131 (N.C.Ct.App.1982); *State Bank of Towner v. Hansen,* 302 N.W.2d 760 (N.D.1981); *First National Bank of New Bremen v. Turner,* 1 Ohio App.3d 152, 439 N.E.2d 1259 (Ohio Ct.App. 1981); *First National Bank and Trust Co. of Enid v. Holston,* 559 P.2d 440 (Okla.1976); *Savoy v. Beneficial Consumer Discount Co.,* 503 Pa. 74, 468 A.2d 465 (1983); *Investors Acceptance Company of Livingston, Inc. v. James Talcott, Inc.,* 61 Tenn.App. 307, 454 S.W.2d 130 (Tenn.Ct.App. 1969); *Pioneer Dodge Center, Inc. v. Glaubensklee,* 649 P.2d 28 (Utah 1982); *American Finance Corporation v. DeLong,* 140 Vt. 292, 437 A.2d 1100 (1981); *In re Thomas,* 12 U.C.C.R.S. 578 (W.D.Va.1973); *Timms v. James,* 28 Wash. App. 76, 621 P.2d 798 (Wash.Ct.App.1980); *First National Bank of Kenosha v. Hinrichs,* 90 Wis.2d 214, 279 N.W.2d 449 (1979). The same rule has even been held to apply under federal common law. *Federal Deposit Insurance Corp. v. Rodenberg,* 571 F.Supp. 455 (D.C.Maryland 1983).

ty agreement giving Ford a security interest in a 1979 Gates Learjet aircraft. Additionally, the note was secured by a guaranty contract executed by Serrio, Fasonella, Barlow, and Wadsworth. Sunjet defaulted on the note and Ford accelerated the maturity of the note and repossessed the aircraft. Additionally, in order to protect its collateral, Ford had to pay $50,262.27 to the City of Dallas to satisfy a tax judgment lien against the aircraft.

On April 11, 1984, Ford sent written notices to Sunjet and each of the guarantors that the aircraft would be sold at public sale on April 24, 1984. These notices described the aircraft as a 1980 Gates Learjet rather than a 1979 Gates Learjet. Additionally, according to the summary-judgment evidence, Ford advertised the public sale of the aircraft in the Dallas Morning News from April 13, 1984, through April 17, 1984, and in the April 16, 1984, edition of the Aviators Hot Line. The summary-judgment evidence is silent as to whether the public advertisements of the sale referred to the aircraft as a 1979 or a 1980 model.

Pursuant to these notices, a public sale was held on April 24, 1984, and the aircraft was auctioned off. Bidders included Duncan Aviation, Don Davis, and Ford. The aircraft was sold to Ford for the high bid of $850,000. Thereafter, Ford resold the aircraft to Wayne Tillett Aircraft Sales, Inc. for $890,000, which sum was first applied to the $52,290.52 tax judgment and the remainder was credited to the note.

Ford then sued Sunjet and the guarantors for the deficiency on the note in the sum of $863,720.24 plus interest at 16% per annum. After the defendants had answered, Ford filed a motion for summary judgment. Sunjet and the guarantors responded to the motion for summary judgment asserting that they failed to receive proper notice of the sale of the aircraft and that the aircraft was not sold in a commercially reasonable manner. With respect to notice, the affidavit of Wadsworth, an officer of Sunjet, averred that Sunjet did not receive written notice of the sale but only

telephonic notice seven days prior to the sale. With respect to whether the sale was commercially reasonable, the affidavit of Claycombe, Sunjet's attorney, averred that he attended the sale of the aircraft. Claycombe's affidavit stated that a representative of Ford declined to make available to the bidders the log books, declined to demonstrate that the aircraft was airworthy, and declined to start the aircraft's engines. Claycombe stated that it was announced to be a sale of the aircraft where is and as is with no warranties.

■ Thus, the only summary judgment evidence tending to support the inference that the sale was commercially reasonable is: (1) the sale was advertised to some extent; (2) there were three bidders at the sale; and (3) the collateral sold for a certain price. This evidence is not sufficient to establish as a matter of law the commercial reasonableness of this sale. In sales of collateral of this nature, the testimony of an expert may be necessary to establish that procedures used complied with practices normally followed in the industry, or that the sale was otherwise commercially reasonable. The normal procedures used in jet aircraft sales are not within the knowledge of the average person. Without expert testimony, neither we nor most other judges would have sufficient knowledge to be able to determine the reasonableness of the methods used in such a sale.

In sum, we have reviewed the affidavits filed by Ford in support of its motion for summary judgment and conclude that the summary-judgment evidence fails to establish that this sale was conducted in a commercially reasonable manner as a matter of law. On the contrary, the affidavits of Sunjet affirmatively raise the issue of commercial reasonableness in the manner of sale. Because the burden of proof on this issue was upon the movant, Ford, the summary judgment was improperly granted. Consequently, we reverse the judgment of the trial court and remand this case for trial on the merits.