SCHOOL SUPPLY COMPANY, INC., James J. Gormley, Jr., and Elizabeth S. Gormley, Appellants,

v.

FIRST NATIONAL BANK OF LOUISVILLE, Appellees.

No. 84–CA–300–MR.

Court of Appeals of Kentucky.

Nov. 30, 1984.

Case Ordered Published by Court of Appeals Feb. 22, 1985.

Ronald A. Newcomer, Shuffett, Mooney, McCoy, Campbell, Leathers & Newcomer, Lexington, for appellants.

John T. McGarvey, Carolyn B. Wetterer, Morgan & Pottinger, Louisville, C. Edward Hastie, Hastie & Murray, Lexington, for appellees.

Before GUDGEL, McDONALD and MILLER, JJ.

McDONALD, Judge:

This is an appeal wherein the appellants claim that the trial court erred in granting appellee First National Bank of Louisville a summary judgment. The appellants contend that because an issue of fact is involved a summary judgment is precluded from consideration.

Appellants' sole claim of error is stated thus: The trial court erred in granting the in rem judgment and order of sale since the question of the commercial reasonableness of the disposition of the inventory collateral by the First National Bank is a question of fact and not one of law.

The background for the actions taken shows that appellant School Supply Company, Inc., on December 11, 1979, borrowed $240,000 from the appellee bank. The note contained a payment schedule with 12% interest and was signed by appellant James J. Gormley, Jr., President. By a separate transaction a guaranty agreement was signed by James J. Gormley, Jr., as an individual. Additional collateral securing the loan and the guaranty agreement were mortgages signed by James J. Gormley, Jr., and Elizabeth S. Gormley, his wife, securing for the bank two lake lots and a house with lot in Lexington.

In addition to the real estate mortgages, the bank held a security interest in all accounts receivable, all inventory, all machinery and equipment, all office furniture and fixtures, and certain described vehicles.

There is no question that the appellants defaulted on the notes causing the appellee to file suit demanding the following:

1. Acceleration of payments on the note and judgment in the sum of $233,088.21, plus accrued interest in the sum of $18,-541.64;

2. To be adjudged first mortgage lien on the real properties;

3. That real properties be sold by the court; and

4. That all nonreal property of School Supply Company, Inc. be repossessed, sold, and the proceeds applied to the court costs, attorneys fees and the debt; further, that the bank have judgment for any deficiency after the proceeds of sale are applied to the loan.

With the help of the Fayette County Sheriff, and armed with an order of court, the bank took possession of the premises and inventory of the defaulting company. The sheriff made a return on the writ of possession by filing an inventory list. Next, the appellee moved the court for an order of sale of the collateral repossessed but the court denied the motion.

The appellee then proceeded on its own to sell the collateral without the approval of the court. Attempts were made to dispose of the collateral through sales to dealers and wholesalers, but to no avail. The bank then sought the services of Vernon Hatton, a liquidator and auctioneer in Lexington. A decision was made to conduct a private sale on the premises of the supply company, and then auction the large and other remaining items. Notices were mailed to all concerned and advertisements were circulated.

The appellants contend that the private sale of February 25 and 26, and the auction of February 27 and March 6, 1982, were not only unapproved by the court but expressly refused by the court when approval was sought. The events were glorified garage sales which were contrary to accepted methods of liquidation of instructional materials and school supplies, and as such constituted a "commercially unreasonable" method of disposing of such collateral. Appellants' brief stated, "Never has so

much been sold for so little with so much effort."

Argument is made that by simply looking at the mathematics of the disposition of the property, where $163,194.40 of assets were sold for a net liquidation sum of $20,564.14, these facts alone make it facially a commercially unreasonable disposition.

The appellee counters that argument by stating that out of the gross liquidated amount of $38,613.41, $18,045.27 had to be paid in expenses, i.e., $9,050 in lease and back rent payments.

In opposition to the motion for summary judgment, the appellants filed an affidavit of counsel which they believed created a factual issue sufficient to overcome summary disposition of the case. Counsel's affidavit revealed a potential expert witness, Larry Singer, of Winwood, Pennsylvania. Mr. Singer was formerly marketing director of Instructo-McGraw Hill Publishers. He began and operated two companies dealing in school supplies and instructional materials. Mr. Singer proffered, through counsel's affidavit, that it was not normal practice in the trade for dealers in inventories of instructional materials and school supplies of distressed businesses to sell the property at public auction because this results in excessive loss. Mr. Singer was of the opinion that the property should have been sold in bulk through an organization such as the National School and Equipment Association. Notwithstanding the affidavit filed, the court nevertheless granted summary judgment.

Our statutory guidance is found in K.R.S. 355.9–504(3), SECURED PARTY'S RIGHTS TO DISPOSE OF COLLATERAL AFTER DEFAULT—EFFECT OF DISPOSITION. "... Disposition of the collateral may be by public or private proceedings ... but every aspect of the disposition including the method, manner, time, place and terms must be *commercially reasonable.*" (Emphasis added.)

It is necessary for us to determine whether "commercially reasonable" is a question of law for the court to decide or a question of fact for a jury to consider. In review, the following are undisputed facts. Prior to the disposition the appellee: 1) employed a qualified and experienced auctioneer, Vernon Hatton, to advise the appellee and conduct the liquidation of the collateral; 2) advertised prominently the sale in 21 separate publications in the area's largest newspapers; 3) advertised the sale in the largest professional journal for educators; 4) sent individual notices to 58 private and parochial schools; and 5) put up signs on the premises of the defaulting company and circulars were distributed in the area's shopping centers. This effort resulted in the following: 1) 200–300 bidders attending the proceedings; 2) 116 successful bidders were accounted for on the two days of the auction; and 3) bidders came from as far away as Cincinnati, Ohio.

■ Unquestionably the appellants were on notice of the method of disposition of the collateral as the case progressed. We agree with the appellants that the secured party (appellee) rather than the debtor (appellants) has the burden to prove commercial reasonableness. *See Bank of Josephine v. Conn*, Ky.App., 599 S.W.2d 773 (1980), and *Central Bank and Trust Company v. Metcalf*, Ky.App., 663 S.W.2d 957 (1984).

■ The phrase "commercially reasonable" under the statutory scheme is the ultimate or conclusory fact which becomes the conclusion of law for the court to determine. However, K.R.S. 355.9–504(3) is explicit in requiring even the evidentiary facts to be commercially reasonable, including method, manner, time, place and terms of the disposition. If there is a dispute concerning the evidentiary facts, i.e., one party contending notices of the sale were mailed and the other party denying it, then an evidentiary fact issue is created which must be resolved by the fact finder. However, whether or not notice by regular mail is "commercially reasonable" is an issue of law for the court to decide. With the great disproportionate difference between the value of the property and what ultimately was realized from the sales and auctions,

the trial court had a duty to scrutinize the proof. We are impressed that he did. Keep in mind that under K.R.S. 355.9–507(2) the fact that a better price could have been obtained by a sale at a different time or in a different method is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. This principle falls within the general theme found in *Sizemore v. Bennett*, Ky., 408 S.W.2d 449 (1966). There it was said that mere inadequacy of price alone is not ground for setting aside a judicial sale. We do believe that the great disproportionate difference between the value of the property and what was realized by sale created a presumption of "commercial unreasonableness" which had to be overcome.

That presumption was overcome by the trial court concluding, as a matter of law, that appellee's disposition proceedings were commercially reasonable. It is also significant to note the fact that the appellants made no effort to stop the sale and auction.

It is our opinion that the trial court was under a duty to enter the summary judgment as it did under the authority of *Bennett v. Southern Bell Telephone and Telegraph Company*, Ky., 407 S.W.2d 403 (1966), because there was no genuine issue as to any material fact.

MILLER, J., concurs.

GUDGEL, J., concurs in result.