**Japee McCOY, Jerry McCoy and John Stanley, Movants,**

v.

**AMERICAN FIDELITY BANK & TRUST CO., Respondent.**

Supreme Court of Kentucky.

July 3, 1986.

Rehearing Denied Sept. 25, 1986.

Thomas J. Roberts, Middlesboro, for movants.

Allen C. Trimble, Corbin, for respondent.

LEIBSON, Justice.

Japee McCoy, Jerry McCoy and John Stanley were partners in a business they called the JMSCO Corporation, located in Phelps, Kentucky. They entered into an "Equipment Lease Agreement" with American Fidelity Bank and Trust Co. to lease two pieces of heavy equipment. The JMSCO Corporation, and each of the three movants, individually were designated as "Lessees," "individually and jointly" liable.

Throughout this lawsuit all parties have treated this Lease Agreement as creating a security interest covered by Article 9 of the Uniform Commercial Code, "Secured Transactions," and more particularly by KRS 355.9–504(3) which controls a secured party's right to dispose of collateral after default. This Section requires that "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." This in turn requires that "reasonable notification of the time and place of any public sale ... shall be sent by the secured party to the debtor," so that the secured party may buy at the sale. Under the Code and the facts of this case, the issue turns on whether "reasonable notice" was "sent," regardless of receipt.

The movants made five monthly payments on the equipment and then defaulted. The Bank then repossessed the equipment and sold it at a public auction that occurred on Tuesday, September 21, 1982. The Bank's lawyer had mailed notice of the "public sale" to one of the movants, John Stanley, by certified letter dated September 13, 1982 and postmarked September 14, 1982. This certified letter was properly addressed, but returned unclaimed.

The Bank's lawyer also claims to have used the regular mail to mail copies of the notice letter to the other two movants, Japee and Jerry McCoy, but corroboration for this is strangely missing. There is not even a "c.c." on the Bank's office copy of the letter to suggest that a carbon copy was mailed.

After the sale the Bank instituted the present action to recover the deficiency balance. The trial court instructed the jury by interrogatories to decide: (1) whether the Bank's attorney did in fact mail the letter dated September 13, 1982 to Japee and Jerry McCoy; and (2) whether the notice letter was sent reasonably as to time, considering the date of the sale contained in the letter.

The jury answered "no" to both interrogatories. The trial court entered a verdict for the defendant, and the Bank appealed. The Court of Appeals reversed, reasoning:

1) The three movants were partners and notice to one partner of any matter relating to partnership affairs operated as notice to the partnership. KRS 362.205. Therefore, the Bank's certified letter to John Stanley constituted notice as a matter of law to Japee and Jerry McCoy.

2) "[W]hether or not notice is 'commercially reasonable' is a question of law for the court to decide"; here the notice was "sent ... by certified mail eight days prior to the sale date," and therefore the "appellees were given sufficient time to protect their interest by participating in the sale, or by taking appropriate steps to oppose the sale."

The Court of Appeals concluded that "appellees received commercially reasonable notice of the equipment sale as a matter of law." They reversed the judgment of the Knox Circuit Court.

We have accepted discretionary review, and we reverse the Court of Appeals and reinstate the judgment because, under the facts of this case, the question of whether the notice was "commercially reasonable" was a question which the trial court properly submitted to the jury to decide. The jury having concluded that the notice was not reasonable, the trial court properly entered judgment for the movants.

The first issue is whether, because the movants were operating as partners, assuming a notice was properly sent to John Stanley, would this be binding on Japee and Jerry McCoy? The movants claim that the Court of Appeals improperly applied general partnership principles of law to abrogate

the mandatory "debtor" protection provided under the Uniform Commercial Code, Section 9–504(3).

KRS 362.205 of the Partnership Act provides that "notice to any partner of any matter relating to partnership affairs ... operates as notice to ... the partnership." However, Section 355.9–504(3) of the U.C.C. requires that "reasonable notification of the time and place of any public sale ... shall be sent by the secured party to the debtor." The McCoys claim that since each "individually signed" as liable on the Agreement, each is a "debtor" to whom notice must be sent. Their argument is that the language of the U.C.C. which applies here, specifically, takes precedence over the provision of the Partnership Act which is of only general application.

█ We tend to the opinion that, given the specific facts of this case, the circumspect thing for the Bank to do was to attempt to notify the McCoys of the sale, which is exactly what the Bank's attorney claims to have done. This issue was submitted to the jury which decided that it did not believe that any letters had been mailed to the McCoys. We need not explore this issue because the overriding issue, regardless of whether copies of the letter dated September 13th and postmarked September 14th was sent along to the McCoys, is whether the notice letter admittedly sent to Stanley was sent a reasonable time in advance of the sale. This issue was submitted to a jury which found that it was not. The Court of Appeals held that the trial court should have decided otherwise as a matter of law. We disagree. Since we affirm the jury verdict and judgment that the notice letter was not sent a reasonable time in advance of the sale, the question whether letters needed to be sent separately to the McCoys becomes of no consequence.

The Court of Appeals held that the "jury's function is limited to resolving issues of evidentiary fact," and that "whether or not notice is 'commercially reasonable' is a question of law for the court to decide." The Court of Appeals cited as

authority a previous Court of Appeals' decision in *School Supply Co., Inc. v. First National Bank of Louisville,* Ky.App., 685 S.W.2d 200 (1985). The Court of Appeals then made the finding that the Bank "sent" the debtor "notice by certified mail eight days prior to the sale date," which was, in its "opinion" "sufficient time to protect their interest by participating in the sale, or by taking appropriate steps to oppose the sale."

Judging from the postmark, which is more reliable for deciding when notice was sent than is the date typed on the letter, the notice was sent seven days in advance, not eight. The movants claim that further allowing time for delivery and an intervening weekend, they really would have had only one business day in which to make arrangements to participate in the sale, even if they had received the notice, and that this was not "commercially reasonable."

Thus, even though the evidentiary facts as to when notice was sent to Stanley were perhaps not in dispute, whether one should regard the notice as sent one day or eight days before the sale, i.e., what can be reasonably inferred from the evidence, is very much in dispute. The *School Supply Co., Inc.* case is in error when it states:

"The phrase 'commercially reasonable' under the statutory scheme is the ultimate or conclusory fact which becomes the conclusion of law for the court to determine." 685 S.W.2d at 203.

█ On the contrary, as a general rule, the question of what is "commercially reasonable" is a question of fact, not a question of law. The controlling principles are thus summarized in D. Leibson & R. Nowka, *Uniform Commercial Code of Kentucky,* (1983) § 8.6(D) at 845:

"As stated in *Nelson v. Monarch Investment Plan, Inc.,* [Ky., 452 S.W.2d 375 (1970)] the purpose of notice is to permit the debtor to bid at the sale or to protect himself from an inadequate sale price by notifying would-be purchasers of the sale. In addition, proper notice allows the debtor to exercise the right of re-

demption before sale. Exercise of these rights requires sufficient lead time for the debtor to obtain financing for the bid or redemption. The question of whether reasonable notice was sent *is a question of fact.*" (Emphasis added).

Anderson's *Uniform Commercial Code,* (2d ed. 1971) § 9–504:14, styled "Questions of law or fact," states:

"If there is a dispute as to whether reasonable notice has been given the question is to be determined by the jury.

Whether notice is reasonable generally presents a question of fact for determination by the jury."

In § 9–504:13, Anderson states:

"While an expert may testify as to the usages of the trade, he may not directly give his opinion as to whether the notice of resale by the creditor was reasonable."

■ These rules do nothing more than treat commercial reasonableness as an ultimate fact for a jury to determine in this type of transaction, the same as in other areas where reasonable conduct is at issue. The *School Supply Co., Inc.* case errs when it treats the question of what is "commercially reasonable" differently than what is reasonable in other fields of human conduct. There is no such classification as "ultimate or conclusory fact ... for the court to determine." *School Supply Co., Inc. v. First Nat. Bank, supra* at 203. The issue in conduct of commerce, as with other business enterprises, is not a "conclusory matter" for the court rather than a jury issue when the state of the evidence is such that, although the evidentiary facts are not in dispute, reasonable minds can differ as to the appropriate ultimate or conclusory facts which may be inferred from the evidence.

As stated in *Beatrice Foods Co. v. Chatham,* Ky., 371 S.W.2d 17, 19 (1963), "this court will not invade the jury's province to ... draw the ultimate conclusion"; and in *Horton v. Union Light, Heat & Power Co.,* Ky., 690 S.W.2d 382, 385 (1985), "the verdict of the jury resolves any conflicts in the testimony and also any conflicts in the rea-

sonable inferences to be drawn from the testimony in favor of the prevailing party...." See also, *Current v. Columbia Gas of Ky., Inc.,* Ky., 383 S.W.2d 139 (1964); *Mahan v. Able,* Ky., 251 S.W.2d 994 (1952); *Murphy v. Homans,* 286 Ky. 191, 150 S.W.2d 14 (1940). Where more than one theory is consistent with the evidence, a jury may so conclude. *Penn Central Transportation Co. v. Skaggs,* Ky., 489 S.W.2d 26 (1972).

The Kentucky Uniform Commercial Code provides in KRS 355.1–103: "Unless displaced by the particular provisions of this chapter, the [general] principles of law ... supplement its provisions."

■ There is no special rule that ultimate or conclusory facts are for the courts to decide in commercial transactions. Unless reasonable minds cannot differ on the conclusions, the ultimate facts are for the jury to decide. In *Horton v. Union Light, Heat & Power Co., supra,* we stated:

"The role of the jury in interpreting the evidence and finding the ultimate facts is an American tradition so fundamental as to merit constitutional recognition. U.S. Const.Amend. VII; Ky. Const. Sec. 7.... It may well be that deciding when to take a case away from the jury is a matter of degree, a line drawn in sand, but this is all the more reason why the judiciary should be careful not to overstep the line." 690 S.W.2d at 385.

Here the trial court was faced with different inferences that could be drawn reasonably from the evidence. The trial court properly decided to submit to the jury the ultimate fact question, whether under all the facts and circumstances notice was sent a reasonable time before the sale. The trial court acted properly in so doing.

The decision of the Court of Appeals is reversed. The judgment of the trial court is affirmed.

All concur.