RENDERED:  AUGUST 30, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0068-MR

AMERICAN COAL TERMINAL, INC.;
SNR RAILOPS LLC; SNR RIVER OPS
LLC; AND STELLA NATURAL
RESOURCES, INC.                                                    APPELLANTS

|  |  |
|---|---|
| v. | APPEAL FROM BOYD CIRCUIT COURT<br>HONORABLE GEORGE DAVIS, JUDGE<br>ACTION NO. 22-CI-00412 |

ETERA, LLC; BOYD COUNTY,
KENTUCKY; COMMONWEALTH OF
KENTUCKY, DEPARTMENT OF
REVENUE; COMMONWEALTH OF
KENTUCKY, ENERGY AND
ENVIROMENT CABINET; DYING
EMBER COAL COMPANY LLC;
KENTUCKY REVENUE CABINET;
MID SOUTH CAPITAL PARTNERS,
LP; ROGER W. HALL; AND
TRIMBLE COAL SALES, LLC                                            APPELLEES


AND


NO. 2023-CA-0250-MR

AMERICAN COAL TERMINAL, INC.;
SNR RAILOPS LLC; SNR RIVER OPS
LLC; AND STELLA NATURAL
RESOURCES, INC.                                                    APPELLANTS


                        APPEAL FROM BOYD CIRCUIT COURT
v.                      HONORABLE GEORGE DAVIS, JUDGE
                        ACTION NO. 22-CI-00412


ETERA, LLC; BOYD COUNTY,
KENTUCKY; COMMONWEALTH OF
KENTUCKY, DEPARTMENT OF
REVENUE; COMMONWEALTH OF
KENTUCKY, ENERGY AND
ENVIRONMENT CABINET; DYING
EMBER COAL COMPANY LLC;
KENTUCKY REVENUE CABINET;
MID SOUTH CAPITAL PARTNERS,
LP; ROGER W. HALL, BOYD
COUNTY MASTER
COMMISSIONER; AND TRIMBLE
COAL SALES, LLC                                                        APPELLEES


                            OPINION AND ORDER
REVERSING AND REMANDING APPEAL NO. 2023-CA-0068-MR; AND
          DISMISSING APPEAL NO. 2023-CA-0250-MR

                        ** ** ** ** **

BEFORE:  LAMBERT, McNEILL, AND TAYLOR, JUDGES.

LAMBERT, JUDGE:  The above-captioned appellants separately appeal two

summary judgments of the Boyd Circuit Court relating to a breach of contract and

foreclosure action filed against them by MidCap Funding XVII Trust ("MidCap"). Their first appeal, No. 2023-CA-0068-MR, is of a monetary judgment and order of sale. Their second appeal, No. 2023-CA-0250-MR, is of an *in rem* summary judgment relating to *ad valorem* tax liens. Upon review and as detailed below, we reverse and remand with respect to Appeal No. 2023-CA-0068-MR; and we dismiss with respect to Appeal No. 2023-CA-0250-MR.

## I. APPEAL NO. 2023-CA-0068-MR

This appeal involves two promissory notes that were both secured by real property and personal property, and the consequences that followed when the holder of the notes chose to conduct a nonjudicial sale of the personal property to satisfy the outstanding balances of the notes before securing a judicial order authorizing it to sell the real property. In a summary judgment favoring the holder, the circuit court determined the holder's nonjudicial sale of the personal property to satisfy the outstanding balance of those notes, and admitted receipt of approximately $1.6 million yielded from that sale to satisfy the outstanding balance of those notes, were irrelevant to: (1) the judgment amount it was required to award the holder representing the outstanding balance of those notes; or (2) the holder's right to sell the remaining security, *i.e.*, the real property, to satisfy the outstanding balance of those notes. As such, the circuit court awarded the holder a judgment of $11,934,461.77 – the amount the holder claimed was the outstanding

-3-

balance of the notes *before* it sold the debtors' personal property.  Further, it entered an order permitting the holders to satisfy the entirety of that amount by selling the debtors' real property.

Contrary to the circuit court's understanding, however, the holder's nonjudicial sale of the personal property and admitted receipt of funds yielded from that sale:  (1) affected the amount of the judgment the holder was entitled to receive from the debtor based upon the notes; and (2) potentially negated the holder's right to collect anything else from the debtors based upon those notes. Due to the circuit court's misapprehension of the law regarding these points, and its refusal to permit the debtors any opportunity to conduct discovery regarding the holder's nonjudicial sale of personal property, we reverse and remand for further proceedings consistent with what is set forth below.

## BACKGROUND

The two promissory notes discussed above have been held by MidCap since August 28, 2020.  During the pendency of this appeal, Etera, LLC, was substituted for MidCap as party-appellee to these proceedings, but we will continue to refer to the holder of these promissory notes as "MidCap" for the sake of simplicity.  All references to "MidCap" set forth below are effectively references to appellee Etera.

-4-

The obligors of those notes are the appellants, whom we will collectively label "SNR." As indicated, they consist of: American Coal Terminal, Inc.; Stella Natural Resources, Inc.; SNR River Ops LLC; and SNR RailOps, LLC. The notes were issued in exchange for loans to SNR that originated in August 2017. The notes have been repeatedly amended since that time and are secured by SNR's real and personal properties.

SNR defaulted on its loan obligations in 2021, which ultimately caused MidCap to accelerate the amounts due and owing under the notes and demand immediate repayment. SNR failed to make any substantial payments thereafter. Consequently, MidCap filed a breach of contract action against SNR in Boyd Circuit Court to collect what remained outstanding. In an affidavit attached to its subsequent motion for summary judgment, MidCap averred that as of September 30, 2022, $7,860,102.57 was owed on the first note; $4,074,359.20 was owed on the second; and that SNR was also liable for MidCap's collection costs and associated attorney's fees.

When MidCap filed its motion for summary judgment on October 27, 2022, it sought: (1) judgment against SNR for the outstanding balance of both notes ($11,934,461.77), plus interest and attorney's fees; and (2) relief in the form of judicial orders permitting it to sell the security for the notes (SNR's personal and real property) to satisfy that judgment. Less than a week later, however,

-5-

MidCap altered the course of its litigation by informing SNR and all other interested parties of its intention to satisfy part of the outstanding balances of the notes by conducting a Uniform Commercial Code (UCC) Article 9 nonjudicial sale of SNR's personal property collateral on November 15, 2022, pursuant to Kentucky Revised Statutes (KRS) 355.9-610 and 355.9-611.

SNR responded with an emergency motion to enjoin MidCap from conducting the nonjudicial sale. In sum, SNR was concerned with the commercial reasonableness of MidCap's proposed nonjudicial sale because, as far as it was aware, MidCap did not have possession or control of the personal property in question; no potential bidders or purchasers could have properly examined it; and MidCap had refused to provide SNR any information regarding MidCap's marketing efforts for the sale, how the sale would be conducted, or the information about the personal property MidCap had disseminated to potential bidders. SNR also argued that a piecemeal sale of its personal property would yield less value than if it were sold with its real property.

MidCap filed a response on November 11, 2022. There, it argued it had sent SNR notice of its proposed nonjudicial sale within a reasonable amount of time per KRS 355.9-612(2), *i.e.*, after SNR's default and more than ten days before the proposed disposition. It also insinuated SNR had effectively waived any requirement that MidCap conduct the sale of SNR's personal property in a

"commercially reasonable" manner; to that effect, it cited provisions in a "Forbearance and Fifth Amendment" to its loan documents indicating SNR had agreed MidCap could conduct a sale of the personal property "at such prices or terms as [MidCap] may deem reasonable." Further, MidCap stated that even if it was required to conduct a "commercially reasonable" sale of SNR's personal property, its proposed sale would satisfy that condition. In support, and attached to its response, it presented the affidavit of its agent, Evan Blum, who made various representations about the value of SNR's personal property and MidCap's efforts in securing potential bidders.

The November 15, 2022 sale occurred before the circuit court was able to hear SNR's emergency motion. SNR accordingly withdrew its motion the day afterward and incorporated the substance of that motion into its November 17, 2022 response to MidCap's still-pending motion for summary judgment. There, SNR argued MidCap's sale of its personal property during the pendency of its summary judgment motion – and the continued pendency of MidCap's unamended motion for summary judgment, which tacitly indicated that whatever MidCap had recovered from that sale had been insufficient to satisfy the outstanding balances of the notes – had effectively converted MidCap's action against SNR into one for a deficiency judgment. SNR argued MidCap was legally precluded from collecting

any deficiency judgment unless it could demonstrate that its nonjudicial sale of SNR's personal property had been "commercially reasonable."

SNR further argued MidCap's motion for summary judgment was premature because it had not been provided an adequate opportunity to conduct discovery. SNR noted it had served MidCap with discovery that same day to resolve the following issues: (1) the nonjudicial sale had occurred merely two days beforehand, and MidCap had provided it no information regarding its commercial reasonableness; and (2) MidCap had yet to provide loan history statements, interest statements, or itemizations of its alleged fees and expenses justifying its calculations of what it claimed were the outstanding balances of the notes. Relevant to this latter point, SNR added that MidCap's claimed outstanding balances – as set forth in its unamended October 27, 2022 motion for summary judgment – could not possibly be accurate because MidCap had recovered – and SNR needed to be credited for – an as-of-yet undisclosed amount of proceeds from the November 15, 2022 nonjudicial sale.

On December 6, 2022, MidCap filed a reply to SNR's response. There, MidCap asserted the issue of "commercial reasonableness" regarding its sale of SNR's personal property, or its receipt of proceeds from that sale, had no bearing upon its entitlement to receive the full amount of what it had prayed for in its summary judgment motion (*i.e.*, $11,934,461.77, plus interest and attorney's

-8-

fees), or its entitlement to sell SNR's real property to satisfy that amount. This was so, MidCap argued, because "mortgage liens in real property are specifically exempt from the scope of Article 9" of the Uniform Commercial Code.

As before, MidCap also argued SNR had contractually waived any requirement of "commercial reasonableness" regarding the amount of time within which it was required to notify SNR about the nonjudicial sale, or regarding how it was required to sell it.

Further, MidCap argued that even if the "commercial reasonableness" of its sale of SNR's personal property was relevant, the evidence of record demonstrated only that the sale had been reasonable. In support, MidCap cited the affidavit of its agent, Evan Blum, which Blum had sworn out days *before* the sale had taken place. MidCap also produced a new affidavit from another of its agents, Sarah Steele, who explained much of how MidCap had calculated its judgment amounts and described the nonjudicial sale in the following broad terms:

> 18. . . . Beginning in December 2021 and through the Article 9 Sale on November 15, 2022, Hilco [Corporate Finance] privately marketed the Collateral and engaged in discussions with several potential purchasers. As a result of those considerable efforts, MidCap was able to obtain a "stalking horse" bid for all of the coal inventory and the Personal Property Collateral located in Ivel, Kentucky. The stalking horse bid assured MidCap of a recovery – far more than Borrowers have been able to deliver in the three (3) years since their last debt service payment – and indicated to other potential purchasers that a third party had conducted the due diligence

-9-

necessary to actually purchase the assets being sold, which, once again, was more than Borrower accomplished over the preceding three (3) years. Nevertheless, Hilco communicated with several additional potential bidders during the notice period of the Article 9 Sale and made available to potential bidders substantial information about the Personal Property Collateral via an online data room once the Sale Notice was issued, as reflected by the Affidavit of Evan Blum.

19. A condition of the stalking horse bid was that an Article 9 sale of the Personal Property Collateral occur on or before November 15, 2022. On October 31, 2022 MidCap issued a Notice of Public Sale to the SNR Entities and all known lienholders based on a recently conducted lien search. In order to preserve the value of the stalking horse offer the Article 9 Sale of the coal inventory and Personal Property Collateral occurred on November 15, 2022 with the highest bid being $1,600,000.00.

SNR filed a reply to MidCap's arguments that same day. SNR again asserted summary judgment was premature. In support, it argued MidCap's December 6, 2022 filing contained entirely new arguments that relied upon entirely new facts and thus constituted an entirely new – and improperly noticed – motion for summary judgment. SNR also included an affidavit from their own Chief Investment Officer, Shane Philip, who averred that the personal property MidCap sold in the nonjudicial auction for $1.6 million had a fair market value in excess of $17,525,500. SNR acknowledged the mere fact that the property could have been sold for a greater amount does not mean the disposition was commercially unreasonable. *See* KRS 355.9-627(1). But, it asserted that this alleged disparity,

-10-

paired with the dearth of information MidCap had provided regarding its marketing and sales procedures prior to and during the November 15, 2022 nonjudicial sale, warranted additional time to conduct discovery regarding commercial reasonableness.

As stated, the circuit court ultimately entered summary judgment in favor of MidCap. It awarded MidCap a judgment of $11,934,461.77 – the amount MidCap claimed was the outstanding balance of the notes *before* it sold SNR's personal property and retained the proceeds. Further, it entered an order permitting MidCap to satisfy the entirety of that amount by selling SNR's real property, which served as additional security for the notes.

To be clear, the circuit court's December 13, 2022 order to that effect does not explain how it reached that result. Nor does it mention or address MidCap's nonjudicial sale, its "commercial reasonableness," or MidCap's receipt of $1.6 million in proceeds from that sale; the circuit court ignored those points entirely. As for why, the circuit court explained its reasoning from the bench during the December 8, 2022 oral arguments on MidCap's motion for summary judgment. The circuit court began by framing what it believed were the dispositive issues, stating, "The main question is, is there a debt? If so, was there a default thereon? If so, then what's owed?" Finding that SNR undisputedly owed MidCap a "debt," and that it had indeed defaulted, the circuit court then proceeded to the

-11-

third "question," *i.e.*, what SNR "owed." In that regard, the circuit court stated that MidCap's nonjudicial sale of SNR's personal property was "a different matter," and that it did not believe that any lack of "commercial reasonableness" relating to MidCap's nonjudicial sale constituted an affirmative defense to MidCap's breach of contract action against SNR or its right to foreclose upon SNR's real property.

At the conclusion of the oral arguments, the circuit court added, "The impact of this [nonjudicial] sale and anything is something you all can further litigate." On December 14, 2022, SNR then sought leave from the circuit court to amend its answer to formally assert as a counterclaim and affirmative defense to MidCap's action what it alleged was MidCap's lack of commercial reasonableness in conducting the November 15, 2022 nonjudicial sale. The circuit court denied SNR's motion without elaboration. This appeal followed.

## STANDARD OF REVIEW

We review a trial court's decision granting summary judgment to determine "whether the record, when examined in its entirety, shows there is 'no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010) (quoting Kentucky Rules of Civil Procedure (CR) 56.03). Summary judgment "is to be cautiously applied"; the trial court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts

-12-

are to be resolved in his favor." *Steelvest v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) (citations omitted). "Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions." *Hammons*, 327 S.W.3d at 448 (citations omitted). Relatedly, "[t]he trial court's determination that a sufficient amount of time has passed and that it can properly take up the summary judgment motion for a ruling is reviewed for an abuse of discretion." *Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010).

## ANALYSIS

We begin by briefly addressing a procedural issue raised by MidCap. MidCap asserts that SNR's appellate brief should be stricken, or that SNR's appeal should be reviewed only for palpable error under the manifest injustice standard, because SNR's appellate brief does not contain statements indicating how the various issues presented on appeal were preserved below. It is unnecessary to discuss this point in more depth, however, because in its subsequent reply brief SNR responded to MidCap's motion by providing citations that we deem adequate and by otherwise curing the alleged deficiencies. *See, e.g.*, *Hollingsworth v. Hollingsworth*, 798 S.W.2d 145, 147 (Ky. App. 1990) (explaining if the required citation is not included in the brief for appellant, the omission may be cured by

providing the citation in the reply brief for appellant). MidCap's motion to strike SNR's brief or review SNR's appeal for manifest injustice is therefore denied.

We now proceed to the substance of our review. As stated, MidCap's theory of recovery against SNR was breach of contract. To prevail on a breach of contract claim under Kentucky law, a plaintiff must prove "(1) [the] existence of a contract; (2) breach of [the] contract; and (3) damages flowing from the breach of contract." *See Brown & Brown of Ky., Inc. v. Walker*, 652 S.W.3d 624, 631 (Ky. App. 2022) (citation omitted). However, under the circumstances of this case and as we will discuss below, MidCap should also have been required to prove (4) that it conducted its nonjudicial sale of SNR's personal property collateral in a commercially reasonable manner; and the circuit court should have granted SNR an opportunity to conduct discovery in that regard.

As a threshold matter, there is no dispute regarding the first two elements of MidCap's claim. A contract existed between MidCap and SNR, and SNR undeniably breached it and defaulted on its repayment obligations.

But, there remains a material dispute regarding the third element. MidCap claimed, *before* it received what it admitted was $1.6 million in proceeds from the sale of SNR's personal property, that it was entitled to $11,934,461.77, plus interest and attorney's fees from SNR; but *after* it received those proceeds, MidCap maintained it was still entitled to $11,934,461.77, plus interest and

-14-

attorney's fees from SNR. Contrary to what the circuit court reasoned from the bench during the December 8, 2022 hearing, this was indeed relevant to MidCap's breach of contract claim. MidCap was obviously required to credit those proceeds against what it claimed remained outstanding on its promissory notes.

More importantly, there was less than a month between the date of the nonjudicial sale (November 15, 2022) and the date that the circuit court entered its order favoring MidCap (December 13, 2022). Such a brief amount of time cannot be considered a meaningful opportunity for SNR to have conducted discovery to ascertain the amount of proceeds that were actually yielded from that sale, or how those proceeds were or should have been applied to its outstanding debt. Nor, for that matter, did MidCap or the circuit court make any assertion to the contrary; instead, both incorrectly claimed further discovery was unnecessary because, in their view, MidCap's nonjudicial sale was simply irrelevant to this matter.

As for the *fourth* element MidCap should have been required to prove to support its motion for summary judgment, we note at the onset that MidCap's nonjudicial sale of SNR's personal property collateral was governed by Article 9 of the UCC, as codified by Kentucky law. With that in mind, KRS 355.9-610 enables a secured party such as MidCap, through a nonjudicial sale, to "sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing" in the event

the debtor defaults on the loan. KRS 355.9-610(1). However, "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." KRS 355.9-610(2). The question of what is "commercially reasonable" is a question of fact. *McCoy v. Am. Fidelity Bank & Trust Co.*, 715 S.W.2d 228, 230 (Ky. 1986). In general, a disposition is commercially reasonable if it was made:

> (a) In the usual manner on any recognized market;

> (b) At the price current in any recognized market at the time of the disposition; or

> (c) Otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

KRS 355.9-627(2).

To be sure, a secured party is not required to prove as part of its prima facie case that it disposed of collateral in a commercially reasonable manner; it must only do so if its compliance with that rule is "placed in issue" by the debtor. *See* KRS 355.9-626(1)(a)-(b). In other words, a secured party's alleged lack of commercial reasonableness is an affirmative defense that the debtor must assert "in accordance with the forum's rules of pleading and practice[.]" *See* UCC 9-626, cmt. 3.[1] But, *if* the debtor raises the issue of the secured party's noncompliance

---

[1] "Official comments to the Uniform Commercial Code, as published from time to time by the National Conference of Commissioners on Uniform State Laws, represent the express legislative

with applicable statutory provisions related to the transaction – including the obligation to dispose of the collateral in a commercially reasonable manner – then the burden of demonstrating otherwise falls on the secured party. KRS 355.9-626(1)(b). A secured party that fails to establish the commercial reasonableness of its action in holding and disposing of the collateral in question may, in turn, be estopped from obtaining any deficiency judgment against the debtor. *See* KRS 355.9-626(1)(c).

Here, by refusing to permit SNR to amend its answer, the circuit court did *not* permit SNR to raise the issue of MidCap's alleged noncompliance with its obligation to dispose of the collateral in a commercially reasonable manner. Consequently, it did not address this point in its order, nor did it provide SNR any opportunity to conduct discovery regarding it. SNR argues the circuit court abused its discretion[2] in this respect, and we agree. Recall, the sole reason given by the circuit court for denying SNR's motion to amend its answer was that, in its view, any lack of "commercial reasonableness" relating to MidCap's nonjudicial sale did not qualify as an affirmative defense to MidCap's breach of contract action against

---

intent of the General Assembly and shall be used as a guide for interpretation of this chapter, except that if the text and the official comments conflict, the text shall control." KRS 355.1-103(3).

[2] The denial of a motion to amend a pleading is reviewed under the abuse of discretion standard. *See, e.g.*, *Ashland Oil & Refining Co. v. Phillips*, 404 S.W.2d 449, 450 (Ky. 1966).

SNR or its right to foreclose upon SNR's real property to further satisfy what it alleged remained of SNR's outstanding debt.

The circuit court was incorrect. When MidCap sold SNR's personal property collateral, received the proceeds, and thereafter maintained that what it had received was insufficient to satisfy the balance of what SNR owed and that it was entitled to more, what remained of its action against SNR sought, by definition, a deficiency judgment.[3] But, if MidCap failed to exercise commercial reasonableness in holding and disposing of SNR's personal property collateral, it potentially negated its right to recover any deficiency judgment – and correspondingly any right to foreclose upon SNR's real property to satisfy any such alleged deficiency. Stated otherwise, any lack of "commercial reasonableness" relating to MidCap's nonjudicial sale could indeed constitute a valid affirmative defense to what remained of MidCap's breach of contract action against SNR, and its attempt to foreclose upon SNR's real property.[4]

---

[3] *See* BLACK'S LAW DICTIONARY 846 (7th ed. 1999) (defining "deficiency judgment" as "a judgment against a debtor for the unpaid balance of the debt if a foreclosure sale or a sale of repossessed personal property fails to yield the full amount of the debt due.").

[4] MidCap asserts that because its promissory notes were also secured by SNR's real property, and because real property liens are not covered by UCC Article 9, any "commercial unreasonableness" that inhered in its nonjudicial sale of SNR's personal property cannot affect its right to foreclose upon SNR's real property. But, MidCap cites no authority supportive of this rather novel proposition; and in any event, Kentucky law provides no such exception. As explained in *Holt v. Peoples Bank of Mt. Washington*, 814 S.W.2d 568, 571 (Ky. 1991), the "commercial reasonableness" affirmative defense:

-18-

To be clear, the circuit court retained authority to grant SNR's motion to amend its answer, even though SNR filed it the day after the circuit court entered its summary judgment. *See* CR 13.05; CR 15.01. The circuit court could not have deemed SNR's motion untimely, as the facts giving rise to this affirmative defense and counterclaim did not exist prior to the November 15, 2022 nonjudicial sale. Moreover, surprise or undue prejudice would not have resulted from granting SNR's motion because, well before the circuit court rendered its judgment, SNR had already made repeated attempts to place MidCap's alleged lack of commercial reasonableness in issue through its emergency motion, response to MidCap's summary judgment motion, and during oral arguments. The circuit court's only justification for denying SNR's motion to amend was its own misapprehension of the law. The circuit court therefore abused its discretion by denying SNR's motion to amend its answer to assert as a counterclaim and affirmative defense to MidCap's action what it alleged was MidCap's lack of commercial reasonableness in conducting the November 15, 2022 nonjudicial sale.

Parenthetically, we add that to the extent SNR is asserting a *counterclaim* against MidCap for consequential damages stemming from

---

[B]egins with a presumption that the collateral is worth at least the amount of debt [it] secures and the burden is cast upon the secured party to prove that its commercial unreasonableness did not result in diminished proceeds, or if it did, by what amount. Upon failure of the secured party to prove that its conduct did not diminish the proceeds, the presumption that the collateral is of sufficient value to satisfy the debt would control and the claim for deficiency would be forfeited.

MidCap's alleged failure to comply with UCC requirements, SNR bears the burden of proving all elements of its case. Thus, for purposes of its counterclaim, SNR – not MidCap – must bear the burden of demonstrating MidCap's lack of commercial reasonableness. *See Pivnick v. White, Getgey & Meyer Co., LPA*, 552 F.3d 479, 487 (6th Cir. 2009) (quoting D. LEIBSON & R. NOWAKA, THE UNIFORM COMMERCIAL CODE OF KENTUCKY 943 (2d ed. 1992)) ("In Kentucky, . . . [i]n a nondeficiency situation where the debtor is seeking damages, the burden should be on it to prove that [the] creditor did not proceed in accordance with the article 9 default provisions.").

In sum, we reverse the circuit court's order denying SNR's motion to amend its answer to assert, as an affirmative defense and counterclaim, MidCap's alleged lack of commercial reasonableness relative to the November 15, 2022 nonjudicial sale; and we correspondingly reverse the circuit court's December 13, 2022 summary judgment order. Prior to entering summary judgment in MidCap's favor, the circuit court should have permitted SNR to raise the issue of MidCap's noncompliance with the applicable statutory provisions related to the November 15, 2022 nonjudicial sale – including the obligation to dispose of the collateral in a commercially reasonable manner. It should have placed the burden of demonstrating otherwise onto MidCap. KRS 355.9-626(1)(b). More to the point,

it should have granted SNR a reasonable opportunity to conduct discovery in this regard.

With that said, a few other issues remain before we can conclude our analysis of this appeal. First, as it did below, MidCap argues that before the nonjudicial sale occurred, SNR contractually waived the right to have its personal property collateral sold in a commercially reasonable manner. However, if SNR entered any such contract, it was void. KRS 355.9-602(7) provides that parties cannot waive the requirement under KRS 355.9-610(2) to dispose of collateral in a commercially reasonable way. Likewise, KRS 355.9-626 provides remedies if commercial reasonableness was not used, and this provision also may not be waived pursuant to KRS 355.9-602(13).

Second, MidCap argues SNR *was* granted an adequate opportunity to conduct discovery. In support, MidCap notes that it filed suit against SNR on June 10, 2022 – roughly six months before the circuit court entered summary judgment in this matter; that SNR did not serve it with discovery requests until November 17, 2022; and that prior to when the circuit court entered summary judgment on December 13, 2022, SNR failed to present an affidavit to the court explaining why additional time for discovery was needed. It also asserts that it adduced uncontroverted evidence – in the form of the Blum and Steele affidavits –

indicating that its November 15, 2022 nonjudicial sale was commercially reasonable.

MidCap's arguments are disingenuous at best. Again, what gave rise to SNR's discovery requests – MidCap's nonjudicial sale – did not occur until November 15, 2022 – less than a month before the circuit court entered its summary judgment. MidCap cites no authority, and we are aware of none, indicating that a period of less than one month constitutes an adequate opportunity for discovery. As for why SNR required additional time for discovery, that much is abundantly clear from the record: to date, MidCap has yet to answer SNR's discovery requests; and SNR has had no meaningful opportunity to controvert the Blum and Steele affidavits. More to the point, the circuit court did not enter summary judgment because it believed SNR had an adequate opportunity to conduct discovery; it entered summary judgment because it erroneously believed that the discovery SNR wished to conduct was *irrelevant*. Simply put, the circuit court's determination that a sufficient amount of time has passed and that it could properly take up MidCap's summary judgment motion for a ruling was an abuse of its discretion. *Blankenship*, 302 S.W.3d at 668.

Lastly, SNR states in its brief that it also attempted to raise other "affirmative defenses" and "counterclaims" in its motion to amend its answer. However, SNR does not identify or make any arguments regarding those other

"affirmative defenses" and "counterclaims." Therefore, we will not address this point further. It is not the responsibility of this Court to construct a party's arguments or search the record to find support for a party's contentions, even assuming support exists. *See Young v. Newsome*, 462 S.W.2d 908, 910 (Ky. 1971); *Sharp v. Sharp*, 491 S.W.2d 639, 644-45 (Ky. 1973).

## II. APPEAL NO. 2023-CA-0250-MR

This second appeal involves a "February 10, 2022" order of the circuit court, entered *after* the circuit court rendered its December 13, 2022 order discussed previously. It adjudicated the validity and amount of several tax liens held by appellees Boyd County ("Boyd") and the Kentucky Revenue Cabinet ("the Cabinet"). In sum, SNR argues its appeal of the December 13, 2022 order divested the circuit court of jurisdiction to enter its "February 10, 2022" order, rendering that order void; and that even if the circuit court retained jurisdiction to enter that latter order, summary judgment was nevertheless premature. Upon review, we disagree that the "February 10, 2022" order was void, but we *sua sponte* dismiss this appeal because that order was interlocutory. *See Francis v. Crounse Corp.*, 98 S.W.3d 62, 64 (Ky. App. 2002) (citation omitted) ("This court on its own motion will raise the issue of want of jurisdiction if the order appealed from lacks finality.").

We begin our analysis by emphasizing an important point: the December 13, 2022 order at issue in Appeal No. 2023-CA-0068-MR, which preceded the order at issue in the instant appeal, did not resolve all the claims between all the parties involved in this matter. The circuit court tacitly emphasized that point by including the "finality" language of CR 54.02(1) in its December 13, 2022 order (*i.e.*, that the judgment was "final" and there was "no just reason for delay"). It also underscored that point on page 8 of its order, stating:

> The right is reserved to MidCap to make later claims for amounts advanced in accordance with the loan documents, for taxes, insurance, assessments, reasonable weatherization and reasonable preservation of the Lockwood Property, sums expended pursuant to KRS 426.525, and other levies and costs and fees paid by the MidCap, including attorney's fees and court costs. The issue of MidCap's recovery herein of such sums is reserved for later adjudication.

The circuit court's December 13, 2022 order also did not adjudicate the validity and amounts of several *ad valorem* tax claims asserted by appellees Boyd and the Cabinet, as well as by another entity, appellee Mid South Capital Partners, LP ("Mid South"). Each of those parties had asked for *in personam* judgments (against the SNR parties) and *in rem* judgments (against the to-be-foreclosed-upon real properties) for the balance of their tax claims. To the extent the circuit court's December 13, 2022 order mentioned those tax claims at all, it

merely stated that, if valid, they would enjoy first priority and would be secured by the real property being foreclosed upon.

From the record, it appears the circuit court still has yet to rule upon the validity of Mid South's tax claims. However, on February 10, 2023 – and over SNR's objections – it granted Boyd's and the Cabinet's motions for summary judgment regarding their *in rem* tax claims, determining the amounts of their tax claims and finding that they constituted valid liens on SNR's real property. That was the full extent of the circuit court's judgment. The circuit court did not grant Boyd and the Cabinet an order of sale regarding the property at issue. The circuit court did not adjudicate Boyd's and the Cabinet's claims for summary judgment *in personam*.[5] It did not include the "finality" language of CR 54.02(1) in its order. And, curiously, the circuit court's order specified it was being entered "nunc pro tunc" as of "February 10, 2022" – an odd tact considering the underlying litigation was not initiated until June 10, 2022; Boyd and the Cabinet first asserted their tax claims later that month; and those entities first moved for summary judgment on October 31, 2022.

SNR now appeals, reasserting the objections it raised below. First, in SNR's view, its pending appeal of the December 13, 2022 order deprived the

---

[5] Whether a creditor may collect debts *in personam* or *in rem* are separate matters involving separate rights, largely because a debtor's personal liability is not at stake in an *in rem* action. *See NewRez LLC v. Emerson*, 656 S.W.3d 255, 258 (Ky. App. 2022).

circuit court of jurisdiction to enter much less give retroactive (nunc pro tunc) effect to its "February 10, 2022" order.

We agree the circuit court could not have given nunc pro tunc effect to its "February 10, 2022" order. As explained over a century ago,

> The office of a judgment nunc pro tunc is to record some act of the court done at a former time which was not carried into the record, and the power of the court to make such entries is restricted to placing to record evidence of judicial action which has been actually taken. It may be used to make the record speak the truth, but not to make it speak what it did not speak but ought to have spoken. Hence a court in entering a judgment nunc pro tunc has no power to construe what the judgment means, but only to enter of record such judgment as had been formerly rendered, but which had not been entered of record as rendered.

*Benton v. King*, 199 Ky. 307, 250 S.W. 1002, 1003 (1923).

Because the underlying litigation was initiated on June 10, 2022, the circuit court obviously could not have adjudicated or intended to have adjudicated anything regarding this case on February 10, 2022. A review of each hearing and the breadth of the appellate record reveals the only instance wherein the circuit court ruled upon the validity of Boyd's and the Cabinet's tax claims – formally or informally – occurred on February 10, 2023. The circuit court accordingly lacked authority to have its order considered effective or rendered prior to that date.

However, we disagree with SNR's further suggestion that the circuit court's order was void for want of jurisdiction because it was entered after SNR

-26-

appealed the December 13, 2022 judgment. "Generally, an appeal divests the trial court of jurisdiction to proceed further in the underlying case." *Commonwealth v. Bailey*, 71 S.W.3d 73, 84 (Ky. 2002) (footnote omitted). But,

> It is settled that if the appeal from the particular order or judgment does not bring the entire cause into the appellate court, but only sufficient of the record to present the issue as to the propriety of the particular order or judgment, further proceedings in the conduct of the cause may properly be had in the lower court. . . . [T]he case is often regarded as pending in the court of original jurisdiction for the purposes of proceedings. . . .

*Garnett v. Oliver*, 242 Ky. 25, 45 S.W.2d 815, 816 (1931) (citations omitted).

As discussed, several claims and issues between the parties to this litigation remained pending after the circuit court rendered its December 13, 2022 order, including the amount and validity of Boyd's and the Cabinet's tax claims. The circuit court also had no need to rule on Boyd's and the Cabinet's tax claims in its December 13, 2022 judgment, as its use of the CR 54.02 finality language enabled it to subject less than all the claims between the parties to appellate review. Those issues were accordingly not brought "into the appellate court" for purposes of our review of that order, and properly remained "pending" below "for the purposes of proceedings[.]" *Garnett*, 45 S.W.2d at 816. Thus, Appeal No. 2023-CA-0068-MR did not divest the circuit court of jurisdiction to resolve the amount or validity of Boyd's and the Cabinet's pending tax claims.

-27-

This leads to the matter of *our* jurisdiction. As stated, the circuit court's "February 10, 2022" order resolved only Boyd's and the Cabinet's *in rem* tax claims. It did not grant Boyd and the Cabinet an order of sale.[6] It did not otherwise resolve all the claims that remained pending below. Nor did the circuit court include the CR 54.02 finality language in its "February 10, 2022" order, which may have enabled it to render this otherwise interlocutory order final and appealable. Consequently, the circuit court's "February 10, 2022" order is an unappealable, interlocutory order, and we lack jurisdiction to review it. *See Tax Ease Lien Invs. 1, LLC v. Brown*, 340 S.W.3d 99, 101 (Ky. App. 2011). We therefore must dismiss this appeal.

## CONCLUSION

For the foregoing reasons, we reverse the judgment with respect to Appeal No. 2023-CA-0068-MR and remand for further proceedings consistent with this Opinion, and we dismiss Appeal No. 2023-CA-0250-MR as interlocutory.

ALL CONCUR.

ENTERED: ___08-23-2024___        _____
                                  JUDGE, COURT OF APPEALS

---

[6] *See Sec. Fed. Sav. & Loan Ass'n of Mayfield v. Nesler*, 697 S.W.2d 136, 139 (Ky. 1985). ("[A]n order directing property to be sold in satisfaction of a judgment is a final judgment.").

-28-

BRIEFS FOR APPELLANTS:

Matthew R. Lindblom
Louisville, Kentucky

BRIEF FOR APPELLEE ETERA, LLC:

Michael J. Gartland
Dean A. Langdon
Lexington, Kentucky

BRIEF FOR APPELLEES BOYD COUNTY, KENTUCKY, AND KENTUCKY REVENUE CABINET:

Nicole Burke
Assistant Boyd County Attorney
Catlettsburg, Kentucky